CELIA McGUINNESS, ESQ. (SBN 159420)
*cmcguinness@dmglawfirm.com*
DEBORAH GETTLEMAN, ESQ. (SBN 267309)
*dgettleman@dmglawfirm.com*
DERBY, McGUINNESS & GOLDSMITH, LLP
1999 Harrison Street, Suite 1800
Oakland, CA 94612
Telephone: (510) 987-8778
Facsimile: (510) 359-4414

Attorneys for Plaintiffs
Christopher Manson, Monique Cipro and Bennett Reed

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MANSON, MONIQUE CIPRO and BENNETT REED,<br><br> Plaintiffs,<br><br>v.<br><br>FRESNO HOUSING AUTHORITY and PARC GROVE COMMONS III L.P.<br><br> Defendants. | CASE NO.<br><br>Civil Rights<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. Fair Housing Act, 42 U.S.C. § 3601 *et seq.*<br><br>2. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794<br><br>3. Fair Employment & Housing Act, Cal. Gov't Code § 12900 *et seq.*<br><br>4. California Government Code § 11135<br><br>5. Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq.*<br><br>6. California Disabled Persons Act, Cal. Civil Code § 54 *et seq.*<br><br>7. Negligence, Cal. Civil Code § 1714<br><br><br>**DEMAND FOR JURY TRIAL** |

### SUMMARY OF PARTIES AND CLAIMS

1.     Plaintiffs Christopher Manson, Monique Cipro and Bennett Reed all reside at the Renaissance Parc Grove, a federally-funded low-income property for disabled military veterans at risk of homelessness. The Renaissance advertises social services and convenient proximity to the VA hospital directly across the street. Despite being designed specifically for veterans with disabilities, the building has only one elevator to access the second floor.  The elevator regularly breaks down, trapping tenants in their units or preventing them from returning to their homes. When it is operating, it regularly malfunctions, free-falls some distance and jerks to a stop, risking injury to the tenants inside. Tenants are often then trapped inside the elevator and have to be freed by the fire department.

2.     Defendants have been aware of these problems for years yet have done nothing to remedy them.

3.     Tenants with physical disabilities are also limited in their ability to access some of the common tenant amenities in and around the building. Reaching the pet area requires traversing an unpaved often muddy path and using the laundry room requires navigating an excessively heavy door, which is difficult and often dangerous for tenants with disabilities.

4.      Plaintiffs bring this action to end Defendants' harmful and unlawful disability discrimination.  They seek an order that Defendants repair the elevator forthwith, adopt new polices to prevent recurrence and to accommodate disabled tenants if future outages occur, and ensure disabled tenants at their property have equal access to all of the facilities and features. Plaintiffs also seek damages for their injuries and reimbursement of their reasonable attorney fees and costs.

### JURISDICTION

5.     This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 for violations of 29 U.S.C. § 794.  This Court has jurisdiction over the pendent state law claims brought under California law pursuant to 28 U.S.C. § 1367.

**VENUE**

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this District and Plaintiffs' causes of action arose in this District.

**FACT ALLEGATIONS**

**THE SUBJECT PROPERTY**

7.      The Renaissance at Parc Grove, located at 2720 E. Clinton Avenue in Fresno, California ("the Renaissance"), is a multifamily rental property designed to house disabled veterans and veterans at risk of homelessness.

8.      In addition to rental housing, the Renaissance provides veteran-specific supportive services such as mental and physical health care, case management, money management, and employment services. These services exist to help tenants become more self-sufficient and independent in the community.

9.      Based upon a review of publicly available records, Plaintiffs are informed and believe that the building, comprised of 40 one and two-bedroom units, was constructed for first use in 2017 and opened to tenants in 2018.

10.     All of the tenant units at the Renaissance are federally subsidized by Project-Based Section 8 vouchers.

11.     The Renaissance has one elevator that is the sole means for tenants and guests with disabilities to travel from the ground floor to the units on the second floor.

12.     The elevator regularly breaks down, trapping disabled tenants in their units or preventing them from returning to their homes.

13.     The Renaissance has an outdoor yard for pets that is inaccessible for people with disabilities as it requires traversing rocky, uneven terrain that gets very muddy in the winter months.

14.     The Renaissance laundry room is inaccessible to tenants with physical disabilities because the door is extremely heavy and has a very fast swing speed. This makes it dangerous for Plaintiffs to enter and exit the laundry room as they risk the door hitting them unless they are

1  able to move out of the way quickly enough.

2      15.   The Renaissance also has installed a metal chain blocking the most direct route

3  for Plaintiffs to access the VA hospital across the street. As a result, Plaintiffs Manson and Reed

4  have to maneuver under the metal chain or traverse an additional quarter mile in their wheelchair

5  to get there, while tenants without disabilities are able to take advantage of the shortcut the

6  building's location provides.

7                              **PLAINTIFFS**

8  **CHRISTOPHER MANSON**

9      16.   Plaintiff Christopher Manson has been a resident of the Renaissance since May

10  2021. He lives with his wife and co-Plaintiff, Monique Cipro, on the second floor.

11      17.   Mr. Manson is paralyzed on his left side because of an injury incurred during

12  active military service. As a result of this disability, Mr. Manson relies on a wheelchair for

13  mobility. Mr. Manson also suffers from PTSD and panic disorder as a result of his service in the

14  military.

15      18.   At all times herein relevant, Mr. Manson has been a person with a disability within

16  the meaning of 42 U.S.C. § 3602 and a person with a disability within the meaning of 29 U.S.C. §

17  705(9)(B), California Government Code § 12926, California Civil Code § 51 and California Civil

18  Code § 54.1. His medical conditions substantially limit major life activities, including standing,

19  walking, climbing stairs, lifting, carrying, pushing, pulling, and regulating his thoughts and

20  emotions.  Plaintiff cannot perform these activities in the same manner, speed and duration as the

21  average person.  Moreover, Plaintiff Manson has a history of and/or has been diagnosed and/or

22  classified as having a physical and psychological impairment.

23

24  **MONIQUE CIPRO**

25      19.   Plaintiff Monique Cipro has been a tenant at the Renaissance since May 2021.  She

26  resides with her husband, co-Plaintiff Christopher Manson, on the second floor.

27      20.   Ms. Cipro has four ruptured discs in her lower back which results in chronic back

28  pain. She also has severe nerve damage in both legs which manifests as constant burning in her

1   legs and numbness in her feet.  As a result, she often has to use a cane or walker for mobility.

2       21.    At all times herein relevant, Ms. Cipro has been a person with a disability within

3   the meaning of 42 U.S.C. § 3602 and a person with a disability within the meaning of 29 U.S.C. §

4   705(9)(B), California Government Code § 12926, California Civil Code § 51 and California Civil

5   Code § 54.1. Her medical conditions substantially limit major life activities, including standing,

6   walking, climbing stairs, lifting and carrying.  Ms. Cipro cannot perform these activities in the

7   same manner, speed and duration as the average person.  Moreover, Plaintiff Cipro has a history

8   of and/or has been diagnosed and/or classified as having a physical impairment.

9

10  **BENNETT REED**

11      22.    Plaintiff Bennett Reed has lived on the first floor at the Renaissance since it

12  opened for occupancy in 2018. Several of Mr. Reed's good friends live on the second floor of the

13  Renaissance and he visits them regularly.

14      23.    Mr. Reed has Charcot neuroarthropathy, a degenerative disorder where the bones

15  and joints of the foot or ankle become unstable, resulting in deformity. Mr. Reed has no

16  articulation in the ankles. He is unable to bear weight on his feet.  Even trying to walk a few steps

17  causes extreme pain. He relies on a wheelchair for ambulation.

18      24.    At all times herein relevant, Mr. Reed has been a person with a disability within

19  the meaning of 42 U.S.C. § 3602 and a person with a disability within the meaning of 29 U.S.C. §

20  705(9)(B), California Government Code § 12926, California Civil Code § 51 and California Civil

21  Code § 54.1. His medical conditions substantially limit major life activities, including standing,

22  walking, climbing stairs, lifting, carrying, pushing and pulling.  Mr. Reed cannot perform these

23  activities in the same manner, speed and duration as the average person.  Moreover, Plaintiff

24  Reed has a history of and/or has been diagnosed and/or classified as having a physical

25  impairment.

26                          **DEFENDANTS**

27      25.    Defendants designed, constructed and operate the Renaissance.

28      26.    Defendant Parc Grove Commons III, L.P. has at all times relevant to this

1    Complaint been the owner of the Renaissance Property. On information and belief, the sole

2    member of the Limited Partnership is the Housing Authority of the City and County of Fresno.

3           27.    Defendant the Housing Authority of the City and County of Fresno ("Fresno

4    Housing") is a public entity governed by the Federal Department of Housing and Urban

5    Development ("HUD"). The majority of Fresno Housing's funding comes from HUD.

6           28.    Fresno Housing has at all times relevant to this Complaint, managed the

7    Renaissance.  According to its website, Fresno Housing manages and/or owns close to 80 multi-

8    family housing developments throughout Fresno County, including the Renaissance.

9

10                          **DEFENDANTS' DISCRIMINATION**

11   Defendants Refuse to Maintain the Elevator

12          29.    Since Defendants opened the Renaissance in 2018, they have failed to properly

13   maintain and service the elevator.

14          30.    The elevator breaks down at least once a week, often trapping people inside.

15   When this happens, the manager either calls the fire department to free them, or he dangerously

16   and unlawfully trips the circuit breaker to the elevator himself, resetting it so it operates again.

17          31.    Based on a review of publicly available records, since 2020, the fire department

18   has had to perform 27 rescues of people stuck in the elevator at the Renaissance. In 2022, the fire

19   department performed 12 rescues alone. In addition, there have been numerous other times when

20   the manager or another tenant tripped the circuit breaker to rescue people trapped inside. On

21   information and belief, the manager does not keep records of these incidents.

22          32.    Based upon publicly available documents, on March 21, 2022, the California

23   Department of Occupational Health and Safety ("Cal OSHA") sent an inspector to the

24   Renaissance to red tag the elevator and take it out of service. Learning on site that a red tag

25   designation would leave disabled tenants like Mr. Manson trapped on the second floor, the OSHA

26   inspector withheld issuing the red-tag and instead contacted Defendant Housing Authority to

27   repair it.

28

33.     Upon information and belief, as of the filing of this lawsuit, Defendants have not repaired the elevator to return it to safe functioning.

34.     In addition to the notice from Cal OSHA, Defendants are aware of the frequent breakdowns because of the number of times tenants have called the manager to alert him and ask him to free them from the nonfunctioning elevator.  The circuit electrical box is mandated to have a lock on it. In violation of the Elevator Safety Orders, Title 8 Cal. Code of Regs., Subchapter 6, Defendants have removed this lock and so this breaker box, located in a common area of the complex, is freely accessible to tenants. Thus many times tenants resort to self-help, going to the laundry room and tripping the breaker to get the elevator working again.

35.     The only way for Plaintiffs Manson and Cipro to access their apartment is via the sole elevator at the Renaissance. Mr. Manson is unable to climb the stairs at all; Ms. Cipro can do so in an emergency, but it causes her extreme pain.

36.     Mr. Manson and Ms. Cipro have been trapped in the elevator several times.

37.     The defective elevator also prevents Mr. Manson and Ms. Cipro from living their lives in the same way as tenants without mobility disabilities. They have been trapped outside of the building for hours in the Fresno heat, unable to use the inoperable elevator to get back to their unit. They have also had to miss appointments, family outings and other events because they had no way to leave the building.

38.     The elevator also has a history of dropping suddenly and without warning, such that tenants inside are jerked around and injured. On March 12, 2022, Mr. Manson and Ms. Cipro were in the elevator when it dropped an entire floor.  Mr. Manson received whiplash, resulting in excruciating pain in his neck, shoulders and radiating down his back. The jarring also aggravated Ms. Cipro's conditions in her back and legs, causing pain.

39.     When the elevator came to a stop, Mr. Manson and Ms. Cipro were trapped in the elevator for 45 minutes because the help button was inoperable. Mr. Manson suffered an anxiety attack. Ms. Cipro tried contacting neighbors and eventually reached another tenant who knocked on the manager's door. The manager tripped the breaker and released them from the elevator.

40.     Ms. Cipro immediately notified him of what had occurred and that Mr. Manson's neck was whiplashed and they were in pain. Management did not follow up with either Mr. Manson or Ms. Cipro nor did they repair the elevator.

41.     A week after the March 12, 2022 incident, Mr. Manson was unable to lift his head without excruciating pain. He now wears a neck brace when outside of the safety of his home to minimize pain and takes prescription pain medication.

42.     Ms. Cipro also spoke to the doctor as a result of this incident.  She received an MRI and was referred to a pain specialist. Ultimately, she was referred to an orthopedic surgeon and was told she needs to have back surgery to remove the ruptured discs in her back to resolve the increased pain.

43.     On August 9, 2022, the elevator again went into free fall then came to an abrupt stop.  Plaintiff Cipro who was inside, was slammed into the side of the elevator, then fell to the ground in pain. She tried and failed to reach the manager.  When Ms. Cipro was finally freed from the elevator, she told the regional manager present that she was injured. The regional manager said she would create an incident report and bring it to Ms. Cipro to sign. She never did. Defendants never presented an incident report to Ms. Cipro and as far as she knows, one was never created.

44.     Being trapped in the elevator is traumatic for Mr. Manson, exacerbating his PTSD. Fear of being trapped in the elevator has resulted in significant deterioration for Mr. Manson's independence. He now has a fear of leaving the unit and being injured and/or trapped in the elevator or being trapped outside without an ability to return to his unit, which has resulted in more time inside and less independence. For the last year, since being injured in the elevator in March of 2022, his fear has escalated to such a point that he will only schedule video appointments with his doctor and refuses to attend in-person. Where he used to leave his unit daily, he will now only leave approximately once every two weeks.

45.     The unreliable elevator causes both Ms. Cipro and Mr. Manson fear that they will be trapped or injured any time they go in the elevator.

46.     Ms. Cipro has contacted the on-site manager and the regional manager of the Renaissance dozens of times to notify them that she and Mr. Manson were unable to get up and down from their apartment because the elevator was out of service or worse, that they were trapped inside, and ask that the elevator be repaired immediately. Management's response is always that they are aware of the issue and are working on it.

47.     Plaintiff Bennett Reed has four friends he regularly visits in their second-floor units at the Renaissance.

48.     While attempting to visit these friends, Mr. Reed has been trapped in the elevator a number of times. He was trapped four times in 2022, for up to an hour each time.

49.     Mr. Reed is deterred from using the elevator because of his fear of being trapped again. Instead, if he wants to spend time with his friends, he has to crawl up the stairs. He crawls up the stairs to visit his friends at least once a week.

50.     Crawling up the stairs is embarrassing and painful for Mr. Reed.

51.     Since moving in, Mr. Reed has contacted the on-site manager of the Renaissance dozens of times to notify him that he was unable to get to the second floor because the elevator was out of service or worse, that he was trapped inside, and ask that the elevator be repaired immediately. Management's response is always that they are aware of the issue and are working on it.

52.     At no point throughout the years of elevator outages and trapping tenants, did Defendants offer physically disabled tenants on the second floor the option to be relocated to a hotel while they had the elevator repaired. Nor did Defendants affirmatively take the elevator out of service because it was trapping tenants and putting them at risk. The only action they took was to post notices telling tenants to take the stairs and apologizing for the inconvenience. Stairs are not an equal option for Plaintiffs.

The Laundry Room is Inaccessible

53.     The laundry room door is too heavy for Mr. Manson to open independently. Ms. Cipro also suffers with opening the laundry room door and has had it slam on her. One day Mr.

Manson accompanied Ms. Cipro to do the laundry and the door slammed on his wheelchair trapping his hand between the chair and the door, causing pain.

54. On information and belief, the laundry room door exceeds the opening force and closing speed requirements of relevant building codes.

55. Although Mr. Reed is capable of opening the door, it causes him great difficulty and frequently leads to injury. The door often slams into his elbows or feet when he's trying to enter. When he's exiting, the door always rebounds onto his wheelchair before he can get past it. He has suffered injury to both his person and his wheelchair because of the closing speed of the laundry room door.

56. Both Plaintiff Cipro and Plaintiff Reed have notified management that the laundry room door is dangerous and inaccessible to them. Defendants have not taken any action to make it accessible.

The Outdoor Pet Area is Inaccessible

57. Mr. Manson and Ms. Cipro have three dogs. Mr. Manson is unable to enjoy the outdoor pet area because it is inaccessible to him. The path to the pet area is unpaved grass, often saturated with water in the winter or cratered in the summer, preventing Mr. Manson from maneuvering there in his wheelchair. The gate latch is also too high for Mr. Manson and opens in towards his wheelchair, making it extremely difficult to maneuver. After attempting this inaccessible path of travel, Mr. Manson is deterred from returning because of the unsafe conditions. He would like to return as soon as it is accessible to him.

58. Mr. Reed has two dogs. Like Mr. Manson, Mr. Reed is unable to access the communal pet area because it has no accessible path of travel and the gate is inaccessible.

59. Due to the lack of access, Mr. Manson and Mr. Reed cannot exercise their dogs or let them off-leash like other non-disabled tenants can.

Path from the Renaissance to the VA is Blocked

60. Despite advertising as an amenity that the Renaissance sits directly across the

1  street from the local VA medical center, approximately a year and a half ago Defendants installed

2  a long metal chain blocking the most direct route from the Renaissance to the VA.

3       61.    The chain prevents people like Plaintiffs from being able to safely access the VA.

4  In order to get to the VA, Plaintiffs either have to try to lift up the chain and wheel under it or for

5  Ms. Cipro, step over it. Both options are hazardous and create a significant barrier for Plaintiffs.

6       62.    To avoid the dangers of the chain, Plaintiffs would have to traverse nearly a

7  quarter of a mile on busy public streets to get to what would otherwise be a one block distance.

8       63.    As a result, each Plaintiff is denied equal benefit of this amenity that is available to

9  other non-disabled tenants.

10

11  Defendants Do Not Have Lawful Reasonable Accommodation Policies

12       64.    Defendants have never offered Plaintiffs any access to reasonable accommodation

13  policies or forms even in the face of a direct request to repair the elevators in order to prevent

14  pain and suffering for disabled tenants. Defendants do not respond to these reasonable

15  accommodation requests except by promising unspecified future behavior such as "we're working

16  on it."

17       65.    For these and other reasons stated above, Plaintiffs are informed and believe that

18  Defendants do not have any lawful reasonable accommodation policies for persons with

19  disabilities.

20                                   **INJURIES**

21       66.    As a result of Defendants' discriminatory conduct, Plaintiffs have suffered

22  emotional distress, including mental anguish, violation of their civil rights, loss of dignity,

23  difficulty, discomfort and embarrassment.

24       67.    In doing the acts of which Plaintiffs complain, Defendants acted intentionally and

25  with oppression, malice, and conscious or reckless disregard of Plaintiffs' fair housing rights.

26  Accordingly, each Plaintiff is entitled to recover punitive and treble damages.

27       68.    Unless enjoined, Defendants will continue to engage in the unlawful acts and in

28  the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at

law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants'

acts and its pattern or practice of discrimination unless relief is provided by the Court.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE FAIR HOUSING ACT**
**[42 U.S.C. § 3601 et seq.]**

69.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein,
the factual allegations contained in the preceding paragraphs.

70.     The building is a "covered multifamily dwelling" having four or more units with
one or more elevators.

71.     As a provider of multifamily housing, Defendants are required to grant requests for
changes in rules, policies, practices, or services when it may be necessary to afford a handicapped
person equal opportunity to use and enjoy the dwelling.

72.     Because the Renaissance is a covered multifamily dwelling designed for first
occupancy after February 1991, Defendants also are required to construct and maintain their
facilities in compliance with disability access regulations.

73.     Based upon the foregoing facts, Defendants have violated the protections afforded
to Plaintiffs under the Fair Housing Act by:

   a. Failing and refusing to grant Plaintiffs' reasonable accommodation requests to repair
      the elevator;

   b. Failing to make their premises accessible to and usable by tenants with disabilities;

   c. Repeatedly failing or delaying maintenance and repairs of the elevator, which is the
      sole manner of ingress and egress to Plaintiffs Cipro and Manson and other tenants
      with physical disabilities above the first floor;

   d. Failing to ensure that Plaintiffs and others similarly situated have equal access to their
      housing when the elevators go out of service;

   e. Failing to implement lawful reasonable accommodation policies, notice policies, and
      emergency evacuation policies;

   f. Maintaining a discriminatory policy requiring Plaintiffs to use the stairs if the

1    elevators are out of service; and

2        g. Discriminating in the provision of services and amenities.

3        74.    For their injuries Plaintiffs are entitled to actual damages.  Defendants are on

4    notice that the elevator poses a severe risk of physical harm to disabled veterans, yet refuse to

5    repair it and indeed take illegal steps to keep it operating.  For these reasons and Defendants'

6    other behavior described above, Plaintiffs also are entitled to punitive damages according to

7    proof.

8

9                          **SECOND CAUSE OF ACTION**

10       **VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**
                              **[29 U.S.C. § 794]**

11       75.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein,

12   the factual allegations contained in the preceding paragraphs.

13       76.    Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o

14   otherwise qualified individual with a disability shall, solely by reason of her or his disability, be

15   excluded from the participation in, be denied the benefits of, or be subjected to discrimination

16   under any program or activity receiving federal financial assistance." 29 U.S.C. § 794; 24 C.F.R.

17   § 8.4(a). Such programs and activities are prohibited from discriminating against qualified

18   individuals with disabilities because a "recipient's facilities are inaccessible to or unusable by

19   individuals with handicaps." *See* 24 C.F.R. § 8.20.

20       77.    Upon information and belief, at all times relevant to this action, Defendants were

21   recipients of federal funding within the meaning of Section 504 of the Rehabilitation Act

22   ("Section 504").

23       78.    As recipients of federal funds, Defendants must operate the Renaissance (their

24   housing program or activity receiving federal financial assistance) so that the program or activity,

25   when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 24

26   C.F.R. § 8.24.  This includes compliance with federal building construction regulations and

27   maintenance of accessible features.  24 C.F.R. § 8.32.

28

79.     Plaintiffs are qualified individuals with disabilities within the meaning of Section 504 and are "otherwise qualified" to participate in Defendants' program, *i.e.*, to be tenants of the Renaissance.

80.     Defendants have violated Section 504 by discriminating against disabled persons, including Plaintiffs by, among other things:

    a.  Failing and refusing to grant Plaintiffs' reasonable accommodation requests to repair the elevator;

    b.  Failing to make their premises accessible to and usable by tenants with disabilities;

    c.  Repeatedly failing or delaying maintenance and repairs of the elevator, which is the sole manner of ingress and egress to Plaintiffs Cipro and Manson and other tenants with physical disabilities above the first floor;

    d.  Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

    e.  Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

    f.  Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service;

    g.  Discriminating in the provision of services and amenities; and

    h.  Failing to comply with Uniform Federal Accessibility Standards, especially Section 4.1.3 *et seq*.

81.     Defendants are on notice of the risk of harm to Plaintiffs' civil rights, yet have not taken steps to prevent or remedy that harm, demonstrating deliberate disregard for Plaintiffs' rights.  Plaintiffs have an expectation of access to the stated amenities, and of safe and legal operation of the premises that they reside in under contract.  Plaintiffs are entitled to their actual damages. For the reasons stated above, they also are entitled to punitive damages according to proof.

# THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### [Cal. Gov't Code § 12955 et seq.]

82.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

83.     The Renaissance is a multifamily complex consisting of at least three rental apartment dwelling units and one elevator and is thus a "covered multifamily dwelling unit" as defined in Cal. Gov't Code § 12955.1.1.

84.     Based upon the foregoing, each Plaintiff is a "person with a disability" as defined in Cal. Gov't Code § 12955.3 and § 12926.

85.     The California Fair Employment and Housing Act ("FEHA") prohibits Defendants from discriminating against any person on the basis of disability. Cal. Gov't Code § 12955.

86.     The Renaissance is a housing accommodation within the definition of Cal. Gov't Code § 12927 in that it is a building, structure, or portion thereof that is occupied as or intended for occupancy as, a residence by one or more families.

87.     Defendants have violated the protections against disability discrimination afforded to Plaintiffs under FEHA by:

    a.   Failing and refusing to grant Plaintiffs' reasonable accommodation requests to repair the elevator;

    b.   Failing to make their premises accessible to and usable by tenants with disabilities;

    c.   Repeatedly failing or delaying maintenance and repairs of the elevator, which is the sole manner of ingress and egress to Plaintiffs Cipro and Manson and other tenants with physical disabilities above the first floor;

    d.   Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

    e.   Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

    f.   Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of

service;

g.   Discriminating in the provision of services and amenities.

88.    For their injuries Plaintiffs are entitled to actual damages.  For the reasons stated above, Plaintiffs also are entitled to punitive damages according to proof.

## **FOURTH CAUSE OF ACTION**

### **VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135**

89.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

90.    California law affords people with disabilities a right to "equal access" to programs and activities subsidized by state funds; such programs may not discriminate against people with disabilities. Cal. Gov't Code § 11135(a).

91.    On information and belief a significant portion of funding to develop and build the Renaissance came from the California Veterans Housing and Homeless Prevention Program, a state-funded source of financial assistance for Defendants.

92.    State-funded programs may not deny a person the opportunity to participate in, or benefit from, its services and programs. 2 Cal. Code Regs § 11154(a). Such programs must provide effective access that results in an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. *Id*. at § 11154(c). Such programs may not "otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by" others in the program or activity. *Id*. at § 11154(g).

93.    On information and belief, Defendants continue to receive financial assistance from the State of California sufficient to invoke the coverage of Government Code Section 11135.

94.    At all times relevant to this action, Plaintiffs have been and are qualified individuals with a disability within the meaning of California law. Cal. Gov't Code § 12926 who participate in Defendants' housing program or activity.

95.     Defendants' acts and omissions discriminate against Plaintiffs solely by reason of their disability in violation of Section 11135 and its regulations. Defendants' discriminatory conduct includes but is not limited to:

a.   Failing and refusing to grant Plaintiffs' reasonable accommodation requests to repair the elevator;

b.   Failing to make their premises accessible to and usable by tenants with disabilities;

c.   Repeatedly failing or delaying maintenance and repairs of the elevator, which is the sole manner of ingress and egress to Plaintiffs Cipro and Manson and other tenants with physical disabilities above the first floor;

d.   Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

e.   Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

f.   Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service;

g.   Discriminating in the provision of services and amenities; and

h.   Failing to comply with regulations governing accessibility, especially Section 4.1.3 et seq.

## **FIFTH CAUSE OF ACTION**

### **VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT**
### **[CIVIL CODE § 51 *et. seq.*]**

96.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

97.     At all times herein mentioned, the Unruh Civil Rights Act, California Civil Code 51(b), provides, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

98.     Defendants are each a business establishment within the meaning of the Unruh Act.

99.     Defendants violated the Unruh Act and intentionally refused to provide Plaintiffs with "full and equal accommodations, advantages, facilities, privileges and services" at the Renaissance by:

    a.  Failing and refusing to construct and/or maintain the Renaissance's facilities in compliance with California Building Code Title 24-2 (including but not limited to CBC 24-2 section 1132A.6 and section 1126A.4), the California Elevator Code, and other applicable separate provisions of law relating to structural access standards, specifically applicable to the entrance, paths of travel, and common area facilities;

    b.  Failing and refusing to provide an accessible means of ingress and egress from their tenant apartments which are required to be accessible in violation of CBC Title 24-2 section 1102A *et seq*. and the separate standards referred to above;

    c.  Failing and refusing to grant Plaintiffs' reasonable accommodation requests to repair the elevator;

    d.  Failing to make their premises accessible to and usable by tenants with disabilities;

    e.  Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

    f.  Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

    g.  Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service;

    h.  Discriminating in the provision of services and amenities.

100.    Defendants' behavior is intentional because they have actual knowledge that Plaintiffs, and other tenants at the Renaissance, are persons with mobility disabilities who need accessible features in order to have equal access to their homes. Their property is advertised as specifically designed for military veterans with disabilities. Despite actual knowledge,

Defendants acted and/or decided not to act to construct and maintain accessible features and intentionally ignored and/or denied face-to-face reasonable accommodation requests made by Plaintiffs over the course of years. Defendants' affirmative discriminatory behavior includes but is not limited to:

    a.   Violating the California Building Code and other State and federal regulations requiring construction and maintenance of accessible features;

    b.   Even after learning that tenants are regularly getting trapped and injured in the elevator, refusing to repair it;

    c.   When informed of the elevator's deficits by, *e.g.*, Cal OSHA and the Fire Department, Defendants affirmatively, repeatedly and deliberately stated they are working on repairs, a statement they know to be untrue;

    d.   Defendants maintain an unlawful and extremely dangerous practice of freeing tenants who are trapped in the elevator by tripping the unlocked circuit breaker to bring the elevator back into operation without repairing the underlying problem that trips the breaker in the first place;

101.    For their injuries Plaintiffs are entitled to actual damages but not less than the statutory minimum for each occurrence of discrimination. Plaintiffs actually encountered physical barriers to access, including a broken and unreliable elevator, thereby suffering difficulty, distress and embarrassment. For the reasons stated above, Plaintiffs also are entitled to treble, punitive and exemplary damages according to proof.

### SIXTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**
**[CIVIL CODE § 54 et. seq.]**

102.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

103.    The Disabled Persons Act ("DPA") states, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions

and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

104.    The Renaissance is a housing accommodation within the meaning of the DPA. Cal. Civil Code § 54.1(b)(2).  Plaintiffs are each a person with a disability within the meaning of the DPA.

105.    Defendants have violated the DPA, sections 54 and 54.1, by:

a.    Refusing to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises. Plaintiffs have requested that Defendants repair the elevator as an accommodation of their disability and Defendants have ignored those requests;

b.    Failing and refusing to maintain their accessible features, specifically their sole elevator, in conformity with the California Building Code and other separate legal standards as described above.

c.    Failing and refusing to provide an accessible means of ingress and egress to and from Plaintiffs' Cipro and Manson's apartment, in violation these same standards.

d.    Failing to provide accessible features in the common areas such as a door to the laundry room that is usable for tenants in wheelchairs and a communal pet area that can be accessed by tenants in wheelchairs.

e.    Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service, and a policy of illegally placing the elevator back in operation when the circuit breaker trips.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE
### [Cal. Civil Code § 1714]

106.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

107.    Defendants, as owners and managers of the Renaissance, have a non-delegable statutory duty to Plaintiffs to ensure a safe path of travel to and from their units and amenities of the Renaissance. Part of this path of travel and amenity for Plaintiffs is an operable elevator.

108.    Defendants breached this duty by failing to properly maintain the elevator and repair it in both the normal course of business and also when expressly directed to do so.

109.    As a direct and proximate result of the negligence of Defendants in failing to maintain the elevator or to maintain any policies related to ensuring a safe path of travel when the elevator is out of order, Plaintiffs suffered and continue to suffer physical pain, embarrassment, fear, degradation and emotional distress.

110.    Plaintiffs are entitled to their actual damages. For the reasons stated above, they also are entitled to punitive damages according to proof.

## **PRAYER**

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request.

WHEREFORE, Plaintiffs pray for judgment and the following specific relief against Defendants:

1.    For an order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To maintain the elevator, a necessary feature of accessibility, in a safe and useable condition;

    c.  To modify its policies and practices to provide alternate, accessible accommodations when the elevator goes out of service;

    d.  To repair and maintain the common area amenities in an accessible condition;

e.    To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons; and

e.    To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities.

2.    That the Court retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, as complained of herein no longer occur and cannot recur;

3.    Plaintiffs do not seek injunctive relief under Cal. Civil Code section 55;

4.    Award to Plaintiffs all appropriate damages, including but not limited to statutory damages, general damages, special damages, treble damages and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

5.    Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal and State law;

6.    Grant such other and further relief as this Court may deem just and proper.

Dated:  May 3, 2023                           DERBY, McGUINNESS & GOLDSMITH, LLP

                                              _/s/ Deborah Gettleman_____
                                              By:    Deborah Gettleman
                                                     Celia McGuinness
                                                     Attorneys for Plaintiffs


## **DEMAND FOR JURY**

Each Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated:  May 3, 2023                           DERBY, McGUINNESS & GOLDSMITH, LLP

                                              _/s/ Deborah Gettleman_____
                                              By:    Deborah Gettleman
                                                     Celia McGuinness
                                                     Attorneys for Plaintiffs